IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  22-cv-00766-LTB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. 915553.511 TETHER,
2. 5.406 BITCOIN,
3. 5.426 ETHEREUM,
4. 3183.22 ADA,

      Defendants.

_____

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*
_____

The United States of America, by and through United States Attorney Cole Finegan and Assistant United States Attorney Kurt J. Bohn, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

### JURISDICTION AND VENUE

1. The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881, seeking forfeiture of defendant property based upon violations of 18 U.S.C. §§ 1956 and 1957, and 21 U.S.C. § 801 et seq.  This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper under 28 U.S.C. § 1395, as some of the acts described herein occurred, in the District of Colorado.

1

## DEFENDANT PROPERTY

3. Defendant property is more fully described as:

a. 915553.511 Tether ("defendant 915553.511 USDT"), held in wallet 1Dp7CYzaNHT69VZaSLPPaSH8u9Fx12PxwM (wallet 1Dp7CY), in Binance Account 37471959, was frozen on September 11, 2021, and was seized on March 4, 2022 and March 10, 2022. Tether is a blockchain based cryptocurrency whose tokens in circulation are backed by an equivalent amount of U.S. dollars and is traded under the symbol "USDT." Defendant 915553.511 USDT is currently being held by the Drug Enforcement Administration.

b. 5.406 Bitcoin ("defendant 5.406 BTC"), held in wallet 1AUXxgue4YjJBVzs4mPJqC9EeBTVWfERxb (wallet 1AUXxg), in Binance Account 37471959, was frozen on September 11, 2021, and was seized on March 4, 2022 and March 10, 2022. Bitcoin is a decentralized blockchain based cryptocurrency that is traded under the symbol "BTC." Defendant 5.406 BTC is currently being held by the Drug Enforcement Administration.

c. 5.426 Ethereum ("defendant 5.426 ETH"), held in wallet 0xd322ac175f6f6156bdeb91853862c78ac7d536c1 (wallet 0xd322) in Binance Account 37471959, was frozen on September 11, 2021, and was seized on March 4, 2022 and March 10, 2022. Ethereum is a decentralized open-sourced blockchain based cryptocurrency that is traded under the symbol "ETH." Defendant 5.426 ETH is currently being held by the Drug Enforcement Administration.

d. 3183.22 ADA ("defendant 3183.22 ADA"), held in Binance Account

37471959[1] was frozen on September 11, 2021, and was seized on March 4, 2022 and March 10, 2022. Cardano is an open-sourced and decentralized public blockchain platform, which can facilitate peer-to-peer transactions with its internal cryptocurrency called ADA. Defendant 3183.22 ADA is currently being held by the Drug Enforcement Administration.

## FACTUAL BASIS FOR FORFEITURE

4.  Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers and intelligence analysis as reported to me.

## CRYPTOCURRENCY

5.  Virtual currency, also known as cryptocurrency, is generally defined as an electronically sourced unit of value that can be purchased with, sold for, or used as a substitute for fiat currency. Cryptocurrency is not issued by any government, bank, or company. It is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Cryptocurrency can be quickly transmitted directly between parties and across national borders, without the need for a facilitating third party or financial institution.

6.  Many cryptocurrencies operate via a "blockchain," which is a record, or ledger, of every transaction ever conducted that is distributed throughout the network. The blockchain does not list the names of parties to the transaction but will list the date

---

[1] There is no individualized wallet for this account because Mr. Alpirez Garcia opened the account with USDT and then converted that into ADA inside that Binance account.

3

and time of the transaction, the originating and receiving public cryptocurrency address, and how much cryptocurrency was transferred.

7. A cryptocurrency wallet may contain multiple cryptocurrency addresses. Ownership of a cryptocurrency wallet denotes stewardship of the multiple addresses contained inside. Wallets can be backed up in a number of ways. The digital files associated with the wallet might be stored locally on the user's computer or stored remotely in the cloud.

8. It is possible to use the blockchain to trace funds forwards and backwards from a single address or a single transaction, not unlike the manner in which investigators can trace the movement of funds in fiat currencies. Despite the anonymized nature of a cryptocurrency blockchain, information identifying the sender, or the recipient of a transaction can be obtained from payment processors or vendors. This information helps investigators identify payment streams, or a single flow of funds over time, belonging to the same pool of funds controlled by the individuals.

9. The term "Tumbling or Mixing" refers to when a cryptocurrency user uses a service provided by a website or software to obfuscate the source or destination of the cryptocurrency. The mixer or tumbling service or software offers to mix or pool potentially identifiable or "tainted" cryptocurrency funds with other individual's funds so as to obscure the trail back to the cryptocurrency's original source.

10. Binance Holdings Limited (Binance) is a worldwide cryptocurrency exchange platform that processes cryptocurrency transactions, payments, and peer-to-peer transactions, and is the largest cryptocurrency exchange in the world in terms of daily trading volume. Binance is headquartered in Grand Cayman, Cayman Islands.

BACKGROUND OF INVESTIGATION

11.     In early 2020, investigators learned through several confidential sources (CSs) that Carlos Alonso Fong-Echavarria, a citizen of Mexico, was involved in cash-for-cryptocurrency exchanges involving proceeds from illegal drug sales.  Fong-Echavarria was operating in the United States, Mexico, Europe, and Australia.

12.     The CSs explained that they had become acquainted with Fong-Echavarria through the website "localbitcoins.com".  Over the course of approximately two years, these CSs conducted numerous cash-for-cryptocurrency exchanges, which were arranged by Fong-Echavarria.  Specifically, the CSs would transfer cryptocurrency from their own addresses into cryptocurrency addresses provided by Fong-Echavarria, in exchange for bulk cash.  The CSs stated that the transactions generally ranged in amounts from $80,000.00 to $120,000.00 and completed one transaction in late 2019 for $400,000.00, which according to the CSs was the maximum amount exchanged at the request of Fong-Echavarria.

13.     The CSs explained that within the United States, their face-to-face cryptocurrency transactions were conducted with Fong-Echavarria's associate who was believed to be his cousin.  The CSs explained they met with the cousin on numerous occasions to complete the in-person cryptocurrency transactions, and further explained, as a matter of protocol, they arranged the transactions telephonically with Fong-Echavarria and completed the transactions in person with the cousin.  The CSs told investigators that the transactions were completed in several locations throughout the United States.

14.     The CSs said that Fong-Echavarria told them that the cash was derived

from family restaurants and cattle ranches and claimed that he purchased the cryptocurrency to sell in Mexico because the return on investment in virtual currency was greater there.

15. Investigators determined that between January 28, 2019, and September 20, 2019, the CSs conducted 63 face-to-face cash to cryptocurrency transactions with Fong-Echavarria in various locations across the United States, including Utah, Colorado, South Carolina, and North Carolina, totaling approximately $3,405,980.00 of suspected drug proceeds.  The largest single transaction was for approximately $400,000.00.  It was also determined the CSs had turned down nearly $3,000,000.00 in contracts from Fong-Echavarria due to lack of ability to obtain cryptocurrency at the pace Fong-Echavarria was requesting.

16. On May 15, 2020, a CS introduced a DEA undercover investigator from the Denver field office to Fong-Echavarria as an individual who provided similar money laundering services, by providing cryptocurrency in exchange for bulk cash.

17. Between May 15, 2020, and June 22, 2021, the CS and undercover investigator conducted 75 cash-for-cryptocurrency transactions brokered through Fong-Echavarria using an undercover Coinbase account.  Fong-Echavarria provided the CS or undercover investigator with either a Bitcoin (BTC) or United States Dollar Coin (USDC) address for the undercover investigator to send the cryptocurrency.

18. One such example occurred on July 7, 2020, when law enforcement picked up money from a drug dealer, and then conducted a follow-up investigation that led to the arrest of two individuals for narcotics trafficking.  Specifically, in the days leading up to an exchange on July 7, 2020, the UC agent was in communication with

Carlos Fong-Echavarria, regarding a money pickup for approximately $100,000 in the Chicago area.  The UC agent then coordinated with DEA investigators in Chicago, who picked up bulk cash from two individuals on July 7, 2020.  The UC agent then sent Fong-Echavarria his portion of the money to a virtual currency wallet provided by Fong-Echavarria.  On July 9, 2020, a DEA Chicago Task Force Officer conducted a follow-up investigation of Jesus Muniz-Godinez, who was identified during the money pick-up on July 7, 2020, and Jorge Ovalle-Sanches.  This investigation resulted in the seizure of $96,450.54 and approximately 9.5 kilograms of cocaine from these individuals and associates.

19. In addition, on August 3, 2021, the UC agent was in communication with Carlos Fong-Echavarria, regarding a money pickup for approximately $150,000 in the Minneapolis, Minnesota area.  This was following a successful money pickup that occurred on August 2, 2021, in St. Paul, Minnesota for $149,990.  The UC agent contacted the DEA office in Minneapolis, Minnesota, regarding the pickup and provided the telephone number of the courier.  On August 4, 2021, the same courier who made the pickup on August 2, 2021, was later identified as Susan Ismari Osuna Siari, contacted the UC agent and arranged to meet later that day in St. Paul, Minnesota.  Investigators conducted surveillance on Osuna Siari, and conducted a traffic stop while she was en-route to the money pickup location.  A search of the vehicle and Osuna Siari resulted in the seizure of approximately $350,000.00 in U.S. currency.  On August 5, 2021, with information developed from this investigation, an additional search warrant was executed in Inver Grove Heights, Minnesota.  The search warrant resulted in the seizure of approximately 250 pounds of methamphetamine and

an additional $75,000.00 in U.S. currency. Three subjects, Nicholas Yoon Lee, Hector Daniel Duerte Ojeda, and Alex Martinez Hernandez were arrested for State of Minnesota narcotics violations.

20. In total, the UC agent conducted 59 Bitcoin transactions, sending a total of 266.7784515 BTC to 26 unique Bitcoin addresses provided by Fong-Echavarria between May 12, 2020, and May 20, 2021.

21. In addition, the UC agent sent 16 USDC transactions, sending a total of 907,847.70 USDC to one USDC address[2] provided by Fong-Echavarria between March 8, 2021, and June 22, 2021.

22. At the time the transactions took place, the approximate United States Dollar (USD) value of the sent 266.7784515 BTC was $3,775,835.44 and the USD value of the sent 907,847.70 USDC was approximately $907,847.70, totaling $4,683,683.14.

23. In most instances, Fong-Echavarria directed the UC to conduct a small-value "test transaction"[3] prior to sending the remainder of the specified virtual currency funds to the same address.

ANALYSIS OF UC TRANSACTIONS

24. Cyber Support Section (SCC) analysts at the DEA conducted blockchain and cluster analysis, explained below, of the 75 transactions brokered by Fong-Echavarria between May 12, 2020, and June 22, 2021, that involved 27 different

---

[2] USDC is a token that is transacted over the Ethereum blockchain. USDC is known as a stable coin where every USDC in circulation is allegedly pegged to the U.S. Dollar.
[3] Individuals transacting in a large amount of cryptocurrency frequently send a small amount of bitcoin to the recipient's wallet before sending a larger amount to ensure there is no error in transcribing the recipient's wallet address.

8

addresses.   None of these 27 BTC and USDC addresses provided by Fong-Echavarria for the undercover transactions were part of a service, such as Binance, and are likely addresses of un-hosted wallets, which means they are not supported by a service, and reside on a user's personal device, such as a mobile phone, computer, or thumb drive.

25.   However, blockchain analysis of the 75 undercover transactions indicated that the BTC and USDC were subsequently sent directly and indirectly from the addresses of the un-hosted wallets to cryptocurrency wallets hosted by the cryptocurrency exchange Binance.

26.   Blockchain and cluster analysis[4] of the 26 destination BTC addresses provided by FONG-ECHAVARRIA indicated that seven addresses were clustered together as part of three different wallets, while the remaining 19 BTC addresses were not clustered with any additional destination addresses.  As described above, a wallet may contain multiple addresses, which is controlled by a single individual or entity.

27.   Blockchain and cluster analysis indicated the following addresses initially provided by FONG-ECHAVARRIA were used in a single transaction, indicating their interrelation as coming into the same wallet, i.e., cluster:

   a. Cluster A: BTC addresses 14NErS1rxJenFnwjMy2umzaVJVGsTEYGsR, 1HReyxFL5oSR8aQ388Ybe8gJHcRfUFrZiU, and

---

[4] Cluster analysis identifies addresses that have been pulled together to complete a transfer of cryptocurrency in a single transaction, also known as co-spend. The cluster association is based on the bitcoin blockchain protocol that each address has a corresponding private key to access and transfer cryptocurrency within the address; thus, the assumption is that when multiple addresses are used to conduct a single transaction, all private keys associated with each address are owned by the same entity.

       1CqERdt5QXrtNMj8voWpW8gqSbhqpN3pQb were clustered together as part of the same wallet,

  b. Cluster B: BTC addresses 19itPjHqjRriKCwhLk7XUjEfToXFULebK5 and 19AyFFQ1ejCBoa5QEpyq6GXCcKitSA2GYe were clustered together as part of the same wallet,

  c. Cluster C: BTC addresses 19Gma69XtiuPFPwh5k35HsijmJpwtjXkFt, 1MEmw7bCU7VFm55rMUWFe62sZca5AiFetR, and bc1qmh85d7tw4mv5g3sgpq7grd0qjzt3f7avrmxqus were clustered together as part of the same wallet.

## TRACING OF FUNDS TO DEFENDANT ACCOUNT

28. On approximately May 22, 2020, two undercover transactions were conducted to a BTC address provided by Fong-Echavarria. Specifically, the BTC address 1G9iKPpT1QKa9bntfZ5eLysPux8aQ7fbYL received a test transaction of 0.0003 BTC, followed by a transfer of 15.50 BTC, from the UC.

29. On approximately May 23, 2020, 22.40 BTC was transferred from address 1G9iKPpT1QKa9bntfZ5eLysPux8aQ7fbYL to 158guKExLmub9krToScMiCRRMPVMiG5oy9 and then later on May 23, 2020, 22.40 BTC was subsequently transferred to BTC address 1MEmw7bCU7VFm55rMUWFe62sZca5AiFetR.

30. On approximately May 28, 2020, two undercover transactions were conducted to a BTC address provided by Fong-Echavarria. Specifically, the BTC address 19AyFFQ1ejCBoa5QEpyq6GXCcKitSA2GYe, located in Cluster B, received a test transaction of 0.0003 BTC, followed by a transfer of 10.78 BTC, from the UC.

10

31. On approximately June 2, 2020, two undercover transactions were conducted to BTC address 19itPjHqjRriKCwhLk7XUjEfToXFULebK5, located in Cluster B. Specifically, this wallet received a test transaction of 0.0003 BTC, followed by a transfer of 24.93 BTC, from the UC.

32. On approximately May 29, 2020, and June 2, 2020, 8.10 BTC and 22.90 BTC was transferred from Cluster B to Cluster C. Cluster C appears to be used as a primary pass-through cluster that funneled UC funds. Cluster C has transacted a total of 496.08251407 BTC from September 5, 2019, to July 5, 2020. Additional analysis identified several direct transactions occurring with virtual currency exchange Binance, and Cluster C.

## BINANCE ACCOUNT

33. Subpoena returns from Binance reveal that wallet 1Dp7CY is held in Binance Account 37471959 (Binance Account 1959), in the name of Anllelo Paolo Alpirez Garcia.

34. Binance Account 1959 was registered on approximately August 13, 2019. As part of the registration process for Binance 1959, the owner of the account was required to provide a government issued identification card as proof of identity, and face verification. The government issued identification card provided for Binance 1959 was Guatemala passport 162280459, in the name of Anllelo Paolo Alpirez Garcia and a date of birth of December 27, 1977.

35. Defendants 5.406 BTC, 915553.511 USDT, 5.426 ETHEREUM, and 3183.22 ADA are cryptocurrencies held in wallets contained in Binance 1959, as outlined below:

   a. Defendant 5.406 BTC was seized in wallet 1Dp7CYzaNHT69VZaSLPPaSH8u9Fx12PxwM (wallet 1Dp7CY);

   b. Defendant 915553.511 USDT was seized in wallet 1AUXxgue4YjJBVzs4mPJqC9EeBTVWfERxb (wallet 1AUXxg);

   c. Defendant 5.426 ETHEREUM was seized in wallet 0xd322ac175f6f6156bdeb91853862c78ac7d536c1 (wallet 0xd322). On May 20, 2021, 5.426 ETH was purchased using a trade from USDT in wallet 1AUXxg.

   d. Defendant 3183.22 ADA was seized in Binance account 1959.

36. Each type of cryptocurrency is held in a separate wallet for that type of cryptocurrency.

37. Defendant 5.406 BTC was seized in wallet 1Dp7CY. Wallet 1Dp7CY had received 1.3 BTC from Cluster C, a primary pass-through cluster that funneled UC funds, on approximately April 27, 2020. Although Alpirez Garcia received the 1.30 BTC from Cluster C prior to UC activity, Cluster C also sent 14.18 BTC between April 1, 2020, and 28 October, 2020, to a Binance account of a known drug trafficker who is currently under federal Indictment. Alpirez Garcia received and sent USDT transactions from/to this known drug trafficker. In addition, Alpirez Garcia converted USDT to BTC in his Binance account which account for most, if not all, of the BTC that has been frozen since Alpirez Garcia's transactions mainly consisted of USDT.

38. Defendant 915553.511 USDT was frozen in wallet 1AUXxgue4YjJBVzs4mPJqC9EeBTVWfERxb (wallet 1AUXxg). In March 2020 and March 2021, a person known to law enforcement as a narcotics trafficker sent two direct

transactions, totaling 7563.32 USDT to wallet 1AUXxg.

39. An analysis of Binance Account 1959 by SCC also revealed that Alpirez Garcia routinely sold USDT and purchased BTC all within his Binance account. He would receive the BTC into the account from wallet 1Dp7CY; and bought USDT, which was allocated in address 1AUXxg in Binance Account 1959, completing 102 trades between January 1, 2021, and July 12, 2021. Because USDT's value is tied to the value of the United States dollar, it is believed to a be a more stable cryptocurrency that experiences less volatility in value as compared to other cryptocurrencies. Thus, converting BTC to USDT would reduce the risk of loss of value from the volatility of the market.

40. An analysis of Binance Account 1959 revealed that Alpirez Garcia received BTC, USDT, TRX, and BTT into his account, but only withdrew in USDT, totaling $664,613.5 USDT, between January 4, 2021, and September 2, 2021.

41. Defendant 5.426 ETHEREUM was seized in wallet 0xd322ac175f6f6156bdeb91853862c78ac7d536c1 (wallet 0xd322). On May 20, 2021, 5.426 ETH was purchased using a trade from USDT in wallet 1AUXxg.

42. Defendant 3183.22 ADA was seized from Binance 1959. On May 20, 2021, 3183.22 ADA was purchased using a trade from USDT in wallet 1AUXxg.

<u>CRIMINAL HISTORY OF ACCOUNT HOLDER ANLLELO ALPIREZ GARCIA</u>

43. In July of 2013, in the District Court for the District of Columbia, Alpirez Garcia, was indicted for violations of 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of Heroin), 21 U.S.C. § 963 (Conspiracy to Import One Kilogram or More of Heroin), and 18 U.S.C. § 1956(h)

(Conspiracy to Launder Monetary Instruments).

44. Alpirez Garcia agreed to plead guilty to Conspiracy to Distribute and Possess with Intent to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)(i) and Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(2)(A) and (h).

45. In conclusion, in light of Alpirez Garcia's known drug trafficking history, and the volume of bulk-currency converted and laundered to cryptocurrencies, there is a reasonable basis to believe that the defendant cryptocurrencies held in Binance Account 1959 constitute drug proceeds and property traceable thereto, and property involved in money laundering, and property traceable thereto.

<u>CERTIFICATION OF CASEY COOPER</u>
<u>SPECIAL AGENT, DRUG ENFORCEMENT ADMINISTRATION</u>

I, Special Agent Casey Cooper, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

_[signature]_

Casey Cooper
Special Agent- DEA

14

## FIRST CLAIM FOR RELIEF

46. The Plaintiff repeats and incorporates by reference the paragraphs above.

47. By the foregoing and other acts, defendant 915553.511 USDT constitutes property involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property, and therefore is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF

48. The Plaintiff repeats and incorporates by reference the paragraphs above.

49. By the foregoing and other acts, defendant 915553.511 USDT constitutes proceeds traceable to an exchange of a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRD CLAIM FOR RELIEF

50. The Plaintiff repeats and incorporates by reference the paragraphs above.

51. By the foregoing and other acts, defendant 5.406 BTC constitutes property involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property, and therefore is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FOURTH CLAIM FOR RELIEF

52. The Plaintiff repeats and incorporates by reference the paragraphs above.

53. By the foregoing and other acts, defendant 5.406 BTC constitutes proceeds traceable to an exchange of a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore is forfeitable to the United States pursuant to 21 U.S.C. §

881(a)(6).

## FIFTH CLAIM FOR RELIEF

54. The Plaintiff repeats and incorporates by reference the paragraphs above.

55. By the foregoing and other acts, defendant 5.426 ETH constitutes property involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property, and therefore is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SIXTH CLAIM FOR RELIEF

56. The Plaintiff repeats and incorporates by reference the paragraphs above.

57. By the foregoing and other acts, defendant 5.426 ETH constitutes proceeds traceable to an exchange of a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SEVENTH CLAIM FOR RELIEF

58. The Plaintiff repeats and incorporates by reference the paragraphs above.

59. By the foregoing and other acts, defendant 3183.22 ADA constitutes property involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property, and therefore is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHTH CLAIM FOR RELIEF

60. The Plaintiff repeats and incorporates by reference the paragraphs above.

61. By the foregoing and other acts, defendant 3183.22 ADA constitutes proceeds traceable to an exchange of a controlled substance in violation of 21 U.S.C. §

801, et seq., and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the Defendant property in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 28th day of March 2022.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: s/ *Kurt J. Bohn*
Kurt J. Bohn
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Ste. 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0402
E-mail: kurt.bohn@usdoj.gov
*Attorney for the United States*